UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

STANLEY ZHONG, and NAN ZHONG, as next
Friend of his MINOR SON,

                Plaintiffs,

                                Civil Case No. 3:25-cv-00365 (ECC/ML)

        v.

CORNELL UNIVERSITY, MICHAEL
KOTLIKOFF, and SHAWN FELTON

                Defendants.

_____

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

ADAM G. PENCE, ESQ. (701233)
CONRAD R. WOLAN, ESQ. (512286)
VALERIE CROSS DORN, ESQ. (505158)
Cornell University
118 Sage Place
Ithaca, New York 14850
Telephone:  (607) 255-5124
Email: apence@cornell.edu

JONATHAN B. FELLOWS, ESQ. (101628)
JACQUELINE E. ZAHN, ESQ. (706206)
BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, New York  13202-1355
Telephone:  (315) 218-8000
Email: jfellows@bsk.com

*Attorneys for Defendants*

Dated: October 14, 2025

22433975

## TABLE OF CONTENTS

I.   NEITHER PLAINTIFF HAS STANDING TO LITIGATE CLAIMS REGARDING CORNELL'S CURRENT ADMISSIONS PRACTICES ............................................................... 1

    A. Stanley Zhong Lacks Standing to Seek Prospective Relief ..................................................... 1

    B. Minor Son Also Lacks Standing .............................................................................................. 3

    C. The Arguments in Plaintiffs' Opposition Cannot Substitute for Alleging in the Complaint that the Plaintiffs are "Able and Ready" to Apply ...................................................................... 3

II.  PLAINTIFFS HAVE NOT ALLEGED ANY FACTS REGARDING CORNELL'S CURRENT ADMISSIONS PRACTICES ...................................................................................... 4

III.  STANLEY HAS NOT PLAUSIBLY ALLEGED FACTS SHOWING THAT HIS 2023 APPLICATION WAS DENIED BECAUSE OF RACIAL DISCRIMINATION ......................... 4

IV.  PLAINTIFFS HAVE FAILED TO OPPOSE THE MOTION TO DISMISS THE INDIVIDUAL DEFENDANTS MICHAEL KOTLIKOFF AND SHAWN FELTON ............... 10

i

22433975

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alameda v. Association of Social Work Boards*,
   2024 WL 4302389 (S.D.N.Y. Sep. 25, 2024)........................................................ 7-8

*Burgis v. New York City Dep't of Sanitation*,
   798 F.3d 63 (2d Cir. 2015).................................................................................7, 8

*Carney v. Adams*,
   592 U.S. 53 (2020)............................................................................................2, 3

*Faculty, Alumni, and Students Opposed to Racial Preferences v. New York University*,
   11 F.4th 68 (2d Cir. 2021) ....................................................................................3

*Gratz v. Bollinger*,
   539 U.S. 244 (2003)...................................................................................1, 2, 3, 4

*Kiley v. AIM Services, Inc.*,
   2025 WL 1282365 (N.D.N.Y. May 2, 2025)..........................................................4

*Mandala v. NTT Data, Inc.*,
   975 F.3d 202 (2d Cir. 2020)...................................................................................8

*Reynolds v. Vill. of Chittenango*,
   2023 WL 6460417 (N.D.N.Y. Oct. 4, 2023) .........................................................10

*United States v. City of New York*,
   717 F.3d 72 (2d Cir. 2013)..................................................................................5, 6

**Statutes**

New York Human Rights Law .................................................................................4, 10

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..........................................................................................7, 8

Defendants submit this reply in support of their motion to dismiss. Plaintiffs fail to respond to Cornell's arguments. Most notably, they cannot explain how either Plaintiff has standing to seek prospective relief, and they cannot explain away their failure to allege any substantive facts about Cornell's past or current admissions practices.

## I.  NEITHER PLAINTIFF HAS STANDING TO LITIGATE CLAIMS REGARDING CORNELL'S CURRENT ADMISSIONS PRACTICES

### A.  Stanley Zhong Lacks Standing to Seek Prospective Relief

Stanley's application to Cornell's College of Engineering was denied in Spring 2023. The Supreme Court thereafter decided *SFFA v. Harvard*, issued on June 29, 2023. Two admissions cycles have passed, and Stanley has chosen not to apply for admission under the current admissions practices. Nor does he allege in the Amended Complaint any intention to apply in the future.

Plaintiffs argue that Stanley has standing based on the Supreme Court's decision in *Gratz v. Bollinger*, 539 U.S. 244 (2003). *Gratz*, however, holds just the opposite. To bring such a lawsuit, rejected applicants must first establish they are able and ready to apply again at the time the complaint is filed. In *Gratz*, plaintiff Partick Hamacher applied to the University of Michigan for enrollment in the fall of 1997 and was denied admission. He enrolled at Michigan State in the fall of 1997, and sued the University of Michigan in October 1997, alleging he had been denied admission because of racial preferences used by the University. 539 U.S. at 251-52. He alleged that he would apply to transfer to the University of Michigan as soon as it stopped using racial preferences. *Id*. at 261. Chief Justice Rehnquist, writing for the majority, found that Hammacher had standing because he "demonstrated that he was 'able and ready' to apply as a transfer student…" *Id*. at 262. Chief Justice Rehnquist, noting that even the submission of a transfer application would not have been enough, stated that:

> If Hamacher had submitted a transfer application and been rejected,

1

he would still need to allege an intent to apply again in order to seek prospective relief. 539 U.S. at 261.

Stanley has elected <u>twice</u> not to reapply to Cornell's College of Engineering in the two admissions cycles since his application was denied. He has also had two opportunities – first, in his initial complaint and, second, in his Amended Complaint – to allege that he intends to reapply, but he has <u>not</u> done so. He therefore lacks standing to seek prospective relief regarding Cornell's current practices under the standards the Court applied in *Gratz.*

Plaintiffs further argue that Stanley has standing to seek prospective relief because the Amended Complaint "establishes his continued interest in challenging Cornell's discriminatory system that doomed his original application." *Plaintiffs' Opp.,* Doc.36, at p. 26. As a matter of law, a "continued interest" in admissions practices does not confer standing; a plaintiff must allege a "concrete, particularized, and imminent" injury. *See Carney v. Adams*, 592 U.S. 53 (2020). In *Carney,* the plaintiff was challenging certain requirements for judicial appointments in Delaware as unconstitutional. *Id*. at 56. Although plaintiff alleged he was an attorney and met the qualifications for judicial appointment, he had not applied for the judicial positions at issue. *Id*. at 61. The Supreme Court found he lacked standing because "the record evidence fails to show that at the time he commenced the lawsuit, Adams was 'able and ready' to apply for a judgeship in the foreseeable future." *Id*. at 63. The Court held the plaintiff in *Carney v. Adams* presented only "generalized grievances" that would apply to "all citizens of Delaware":

> Lawyers, such as Adams, may feel sincerely and strongly that Delaware laws should comply with the Federal Constitution … But that kind of interest does not create standing. Rather, the question is whether Adams will suffer a "'personal and individual'" injury beyond this generalized grievance – an injury that is concrete, particularized, and imminent rather than "conjectural or hypothetical."

2

22433975

*Id*. at 60.  The *Carney* decision then revisited what the Court had held in *Gratz*, and noted that the plaintiffs in *Gratz*, unlike the plaintiff in *Carney*, had "introduced evidence that …they were 'able and ready' to apply." 592 U.S. at 65-66.  Stanley has made no such allegation.

## B. Minor Son Also Lacks Standing

Plaintiffs argue in their opposition that "Minor Son's standing is established through his concrete plans to apply to Cornell and his likewise superlative achievements."  *Plaintiffs' Opp.*, Doc. 36, at p. 26.  They further argue that "Minor Son is actively preparing to apply for college…." *Plaintiffs' Opp.*, Doc. 36, at p. 27.

Plaintiffs again disregard the standard the Supreme Court set in *Gratz*.  Minor Son is not "able and ready" to apply to Cornell.  When this lawsuit was filed, Minor Son had not yet started his junior year in high school.  A plaintiff must demonstrate that standing existed when the lawsuit was filed, and has continued throughout. *Carney*, 592 U.S. at 59 ("Adams bears the burden of establishing standing as of the time he brought this lawsuit and maintaining it thereafter.").  Cornell does not accept applications from high school juniors, and Minor Son was neither "ready" nor "able" to apply when this lawsuit was commenced, and he remains unable to apply today.  The allegation that Minor Son intends to apply to Cornell once he becomes "able and ready" does not satisfy the requirements for an actual injury sufficient to afford standing.  *Faculty, Alumni, and Students Opposed to Racial Preferences v. New York University,* 11 F.4th 68, 78 (2d Cir. 2021). In fact, such an assertion just acknowledges the lack of standing.

## C. The Arguments in Plaintiffs' Opposition Cannot Substitute for Alleging in the Complaint that the Plaintiffs are "Able and Ready" to Apply.

Plaintiffs also argue that "[t]he complaint thus establishes that both Stanley and Minor Son are 'ready and able' to benefit from Cornell's admissions process in the absence of discriminatory practices."  *Plaintiffs' Opp.*, Doc. 36, at p. 27.  This assertion does not meet the standard set forth

3

in *Gratz*: in the operative pleading, they had to "allege an intent to <u>apply</u> again in order to seek prospective relief … Hamacher demonstrated that he was 'able and ready" to <u>apply</u>." *Gratz*, 539 U.S. at 261-63 (emphasis added). More important, even if Plaintiffs' opposition could be read to suggest that Stanley is "able and ready" to apply, that assertion is not made in the Amended Complaint, and deficiencies in the complaint cannot be cured in a memorandum of law. *Kiley v. AIM Services, Inc.*, 2025 WL 1282365, at \*6 (N.D.N.Y. May 2, 2025) ("[P]laintiff cannot amend her complaint by asserting new facts or theories for the first time in opposition to a motion to dismiss.").

## II.    PLAINTIFFS HAVE NOT ALLEGED ANY FACTS REGARDING CORNELL'S CURRENT ADMISSIONS PRACTICES

Even if Plaintiffs had standing to seek prospective relief, they have failed to allege any facts regarding Cornell's current admissions practices.  How could they?  Neither Stanley nor Minor Son have applied since *SFFA* was decided.  Instead, they rely on conjecture that Cornell's support of diversity is somehow proof that Cornell is circumventing *SFFA*.  As outlined in Defendants' initial moving papers, there is no rational basis for such conclusory allegations, and the actual statements undermine such assertions.  Doc. 34-1, at pp. 19-21.

## III.    STANLEY HAS NOT PLAUSIBLY ALLEGED FACTS SHOWING THAT HIS 2023 APPLICATION WAS DENIED BECAUSE OF RACIAL DISCRIMINATION

As set forth in Cornell's initial memorandum, whether advanced under Title VI, Section 1981, or the New York Human Rights Law, Stanley's claim requires him to establish that Cornell <u>intentionally</u> discriminated against him on the basis of his race.  The Amended Complaint fails to plausibly allege facts that would support a finding that Cornell intentionally denied Stanley's 2023 application because he is Asian American.

Plaintiffs argue that intentional discrimination may be inferred from "gross statistical

4

22433975

disparities," citing *United States v. City of New York,* 717 F.3d 72 (2d Cir. 2013). Plaintiffs would have this Court stand the Second Circuit's decision on its head. In that case, the United States sued the City alleging that it had discriminated against African Americans and Hispanics in hiring for the Fire Department ("NYFD"). The government noted that African Americans and Hispanics were substantially underrepresented in the NYFD when compared to the City's overall population. 717 F.3d at 77 ("[I]n 2002, blacks were 25 percent and Hispanics were 27 percent of the population. At the time, the percentage of firefighters who were black was 2.6 and the percentage who were Hispanic was 3.7."). The government challenged the City's use of civil service examinations to screen applicants, citing data showing that white applicants had a substantially higher pass rate on the examinations than African American and Hispanic applicants. *Id.* at 78. Individual plaintiffs intervened in the case, and the Second Circuit made clear that their claims required proof of intentional discrimination. *Id.* at 83. The district court found that the challenged examinations had a disparate impact on African American and Hispanic applicants. 717 F.3d at 79. On appeal, the Second Circuit held that the "statistical disparities supporting the unchallenged finding that the Exams ha[d] a racially disparate impact also served to establish a prima facie case on the Intervenors' claim of a pervasive pattern of discriminatory treatment, especially in light of the long-standing pattern of low minority participation in the FDNY." *Id.* at 88.

From this holding, Plaintiffs argue that *City of N.Y.* "shows that a statistically well-grounded pattern-or-practice treatment claim is more than sufficient to survive a motion to dismiss." *Plaintiffs' Opp.*, Doc. 36, at p. 17. Cornell does not dispute that a plaintiff may plausibly allege discriminatory intent on the basis of statistical evidence. Plaintiffs have just failed to do so here. As an initial matter, the data they cite from 2010-2020 does not even include Stanley's application year (2022-2023), or the years leading up to it, and the cited data actually undermines

5

their claims of discrimination in terms of their general population arguments. For example, in *U.S. v. City of N.Y.*, the plaintiffs presented undisputed proof that African Americans and Hispanics were grossly underrepresented in the FDNY as compared to the population of New York City. 717 F.3d at 77 (African Americans were 25% percent of the NYC population and 2.6% of the FDNY). Here, a review of the Census data reveals the opposite is true: the 2020 Census showed that 6% of the United States population identified as Asian,[1] and Cornell's Graduating Class of 2024 profile reported that Cornell enrolled a class in 2020 of which 22.4% identified as Asian. Doc. 34-1 at p. 64.  Looking only from a statistical perspective, Asian-Americans were not underrepresented in Cornell's admitted classes in the years leading up to Stanley applying.[2]

Yet, Plaintiffs argue that, based on national SAT results for 2023, Cornell should have enrolled even more Asian-Americans. *Plaintiffs' Opposition*, Doc. No. 36, at p. 18. (arguing Cornell maintains "an average student-body ratio of Asian to black admittees of *2.7 to 1* whereas the actual ratio of qualified Asian student to black students is almost 10 times that, more like *21 to 1*.").  Plaintiffs base this remarkable conclusion on national SAT statistics.  Plaintiffs state the relative portion of Asian students to African American students who scored in the range of 1400 to 1600 nationally on the SAT in 2023 was 21:1, and then suggest that this ratio must be replicated in all college admissions (or the results are discriminatory). *Plaintiffs' Opp.*, Doc. 36, at p. 9.

Plaintiffs' statistical analysis is not "well-grounded."  Plaintiffs wrongly assume that SAT scores are the <u>only</u> measure of whether a student is "qualified" to attend Cornell and that an

---

[1] *See* Improved Race and Ethnicity Measures Reveal U.S. Population Is Much More Multiracial, U.S. CENSUS BUREAU *available at* https://www.census.gov/library/stories/2021/08/improved-race-ethnicity-measures-reveal-united-statespopulation-much-more-multiracial.html, last visited Oct. 10, 2025.

[2] The 2020 U.S. Census states that 12.4% of persons identified as African American.  Improved Race and Ethnicity Measures Reveal U.S. Population Is Much More Multiracial, U.S. CENSUS BUREAU *available at* https://www.census.gov/library/stories/2021/08/improved-race-ethnicity-measures-reveal-united-statespopulation-much-more-multiracial.html, last visited October 10, 2025. 8.0% of Cornell's Class of 2024 identified as African American. https://irp.cornell.edu/wpcontent/uploads/2021/02/Profile2020_first-year.pdf, last visited Oct. 10, 2025.

6

22433975

applicant with a higher SAT score invariably is a better candidate than an applicant with a lower score. That is simply not the case, and utilizing the SAT as a primary factor would undercut many accomplishments in other areas (academic and otherwise) that demonstrate potential beyond the limited subjects tested on the SAT. Cornell seeks students who excel on multiple levels and in multiple areas as it seeks to build a class that will contribute to the vast array of academic programs and campus activities. To provide a nuanced, unbiased analysis of its applicants, Cornell historically has considered many factors, including standardized tests, transcripts, recommendation letters, extracurricular activities, personal essay responses, among many others. Yet, Plaintiffs ignore this nuance to argue that Cornell discriminated against Stanley because the university made standardized test scores optional during the pandemic and because it did not blindly use SAT scores in its admissions decisions.

For these very reasons, in decisions since *U.S. v. City of N.Y.*, the Second Circuit has cautioned against relying on statistics alone to plausibly allege intentional discrimination. In *Burgis v. New York City Dep't of Sanitation,* 798 F.3d 63 (2d Cir. 2015), the Second Circuit affirmed a Rule 12(b)(6) dismissal of a complaint alleging racial discrimination in the promotion of workers in New York City's Department of Sanitation. The Second Circuit stated:

> Plaintiffs argue, however, that statistics alone may be sufficient to warrant a plausible inference of discriminatory intent if they show a pattern or practice that cannot be explained except on the basis of intentional discrimination…However, to show discriminatory intent in a § 1981 or Equal Protection case based on statistics alone, the statistics must not only be statistically significant in the mathematical sense, but they must also be of a level that makes other plausible non-discriminatory explanations very unlikely.

798 F.3d at 69. In *Alameda v. Association of Social Work Boards*, 2024 WL 4302389 (S.D.N.Y. Sep. 25, 2024), the court granted a Rule 12(b)(6) dismissal of a § 1981 claim. Plaintiff in *Alameda* asserted that the defendants' administration of examinations to become licensed as a social worker

7

22433975

discriminated against Hispanics, as Hispanics were statistically less likely to pass the examination than white test takers.  *1.  Relevant here, in analyzing this claim, the district judge stated:

> Here, Plaintiffs fail to plausibly plead the intentional discrimination necessary for a Section 1981 claim. Instead, Plaintiffs provide statistical data about the first-time pass rates of White, Black, and Hispanic test takers and the eventual pass rates of the same three demographic groups. (*See* FAC ¶¶ 40-43.)  However, the Second Circuit has held that "to show discriminatory intent in a [Section] 1981 . . . case based on statistics alone, the statistics must not only be statistically significant in the mathematical sense, but they must also be of a level that makes other plausible nondiscriminatory explanations very unlikely." *Burgis v. New York City Dep't of Sanitation,* 798 F.3d 63, 69 (2d Cir. 2015). Plaintiffs' alleged data is a far cry from the kind of statistical evidence Courts in the Second Circuit require in connection with allegations of intentional discrimination to survive a motion to dismiss. *See id.* (holding that plaintiffs failed to adequately plead discriminatory intent based on statistics alone because "the statistics provided by plaintiffs show only the raw percentages of White, Black, and Hispanic individuals at each employment level, without providing any detail as to the number of individuals at each level, the qualifications of individuals in the applicant pool and of those hired for each position, or the number of openings at each level") *Id*. at *5.

Plaintiffs' reliance on national SAT scores suffers from the very deficiencies identified above.  First, while Cornell did not require that applicants submit SAT scores when Stanley applied, Plaintiffs offer no allegations as to how Cornell's decision not to require SAT scores for applicants applying in 2023 is evidence of racial discrimination.  Further, Plaintiffs do not explain how they can rely on a national pool of SAT results to plausibly demonstrate that Cornell discriminated against Stanley.  *See also Mandala v. NTT Data, Inc.*, 975 F.3d 202, 209-210, 212 (2d Cir. 2020) (affirming Rule 12 dismissal of disparate impact claim because "if a Title VII plaintiff intends to rely on national statistics to plead a disparate impact claim, she must explain why those statistics can plausibly be expected to hold true for the qualified applicant pool in question.").  Stanley applied to a highly competitive college within a highly competitive university.

8

Flawed comparisons between Cornell statistics (even if Plaintiffs had cited data from the correct years) to statistics from the national pool of students taking the SAT cannot plausibly support a claim of discrimination by Cornell, which did not even require the SAT in 2023.[3]

Plaintiffs also compare statistics from Harvard, as reported in *SFFA*, with Cornell's published class profiles (*Plaintiffs' Opp.*, Doc. 36, at p. 19 of 20), apparently claiming that any school that ever admitted a lower percentage of Asian applicants than Harvard had to discriminate. That assertion is obviously flawed. There is no well-grounded statistical analysis that supports using this data to infer intentional discrimination by Cornell. Plaintiffs make no attempt to justify comparing the two school's admissions data (for different periods of time). Further, the data from Harvard, as reported in *SFFA*, is years out of date as compared to when Stanley applied in 2023.

Perhaps most befuddling, Plaintiffs now appear to argue that Cornell's enrolled student profiles for 2010 to 2020 somehow demonstrate that Cornell applied a quota for Asian applicants. What those profiles actually demonstrate is that Cornell enrolled a class in 2010 of which 14.9% identified as Asian, and enrolled a class in 2020 in which 22.4% identified as Asian. *Plaintiffs' Opp.*, Doc. 36 at p. 19. Rather than showing intentional discrimination, the statistics reflect a growth in Asian student enrollment at Cornell that exceeds national demographic trends, and the varying percentages of enrolled Asian students over that period belies any assertion of quotas.

Finally, Plaintiffs maintain that certain statements by Cornell's administrators may be used to demonstrate discriminatory intent. Cornell does not dispute that discriminatory statements by

---

[3] Plaintiffs attempt to brush away the fact that Stanley applied to a specific program in a specific part of Cornell, the Computer Sciences Program of the College of Engineering, but offers no allegations about the 2023 pool of applicants with which he was competing. They complain that Cornell is attempting to "silo" its College of Engineering and is arguing facts on a motion to dismiss. *Plaintiffs' Opposition*, Doc. No. 36, at p. 22. Stanley's application is inherently part of the Amended Complaint. If he is implying that he did not apply to the College of Engineering's Computer Science Program, his duty of candor to the Court requires him to say so. Further, Plaintiffs cannot escape the fact that Cornell's admissions are done by each College under a different set of metrics. It defies all common sense to argue that Plaintiffs' unsubstantiated allegations about Stanley's application in 2023 to one specific school (whichever school that may be) somehow universally apply to all the other colleges for all time.

22433975

administrators may support an inference of discriminatory intent, but the statements identified are not discriminatory and do not support such an inference: Plaintiffs improperly rely on statements in support of the educational benefits of a diverse student body (after Stanley applied) and have not identified any additional statements, let alone ones that raise an inference that Stanley's 2023 application was denied on the basis of race.  As noted in Cornell's initial memorandum, *SFFA* did not make seeking a diverse student body unlawful; rather, it held that schools may not use racial preferences to pursue diversity. *SFFA*, 600 U.S. at 282.

Stripped of Plaintiffs' meaningless analysis of national SAT results and of decades of incorrect enrollment data, what is left in the Amended Complaint is the allegation that Stanley was a highly-qualified Asian applicant in 2023, and that Cornell has made statements in support of a diverse student body.  This is insufficient to allege a plausible claim of intentional discrimination, and Stanley's claim with respect to Cornell's denial of his application in 2023 should be dismissed.

## IV.    PLAINTIFFS HAVE FAILED TO OPPOSE THE MOTION TO DISMISS THE INDIVIDUAL DEFENDANTS MICHAEL KOTLIKOFF AND SHAWN FELTON

Defendants sought dismissal of the claims asserted individually against Cornell's current President Michael Kotlikoff and its former Undergraduate Admissions Director Shawn Felton because the Amended Complaint alleged no facts showing that either was involved in the consideration of Stanley 2023 application to the College of Engineering sufficient to allege aider and abettor liability under the relevant New York state laws. Plaintiffs' opposition does not address the motion to dismiss the individual defendants or even mention them.  Accordingly, the court should grant dismissal of the individual defendants. *Reynolds v. Vill. of Chittenango*, 2023 WL 6460417, at *11 (N.D.N.Y. Oct. 4, 2023).

10

22433975

/s/ Jonathan B. Fellows

JONATHAN B. FELLOWS, ESQ. (101628)
JACQUELINE ZAHN, ESQ. (706206)
BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8000
Email: jfellows@bsk.com

ADAM G. PENCE (701233)
CONRAD R. WOLAN (512286)
VALERIE CROSS DORN (505158)
Cornell University
118 Sage Place
Ithaca, New York 14850
(607) 255-5124
apence@cornell.edu

*Attorneys for Defendants*

11

22433975