**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

STANLEY ZHONG and NAN ZHONG, as next friend of his MINOR SON,

Plaintiffs,

3:25-cv-365 (ECC/ML)

v.

CORNELL UNIVERSITY, MICHAEL KOTLIKOFF in their official capacity as the President of Cornell University, and SHAWN FELTON,

Defendants.

---

Michael Thad Allen, Esq., *for Plaintiffs*
Jonathan B. Fellows, Esq., *for Defendants*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

On March 22, 2025, Plaintiffs Stanley Zhong, Nan Zhong, and Students Who Oppose Racial Discrimination[1] initiated this action *pro se*. Dkt. No. 1. On July 25, 2025, after retaining counsel, Plaintiffs Stanley Zhong (Stanley) and Nan Zhong (Nan)[2] as next friend of his Minor Son (Minor Son) filed an amended complaint alleging violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*., 42 U.S.C. § 1981, New York State Human Rights Law, and New York Civil Rights Law against Defendants Cornell University (Cornell), Michael Kotlikoff (Kotlikoff) in his official capacity as the President of Cornell University, and Shawn Felton

---

[1] As requested by Plaintiffs, Plaintiff Students Who Oppose Racial Discrimination was voluntarily dismissed. Dkt. Nos. 12, 13.

[2] Because they share a last name, the Court will refer to Plaintiffs by their first names. No disrespect is intended.

(Felton) (collectively the individual defendants). Amended Complaint (Am. Compl.), Dkt. No. 28. The amended complaint alleges that Cornell discriminated against Stanley based on his race when his application for admission was denied and that Cornell continues to discriminate against Asian American applicants because of their race. *Id.* at ¶¶ 87, 113.

Presently before the Court is Defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 34. The motion is fully briefed. Dkt. Nos. 34, 36, 37. For the following reasons, Defendants' motion to dismiss is granted in its entirety.

## I. FACTS[3]

Stanley Zhong, a California resident, is a second-generation Asian American who applied to "an undergraduate Computer Science Program" at Cornell for enrollment in the fall of 2023. Am. Compl. ¶¶ 9, 82. Stanley had a perfect PSAT score, and his SAT score was 1590 out of 1600. *Id.* at ¶ 71. Stanley, who attended Henry Gunn High School, ranked as the best high school in the San Francisco Bay Area by Niche, had a weighted GPA of 4.42, was a National Merit Scholarship finalist, and was "in at least the top 9% of his class." *Id.* at ¶ 70. Stanley is a self-taught programmer, and he has received "top honors in some of the world's most competitive coding contests." *Id.* at ¶ 73; *see also id.* at ¶¶ 74–77 (detailing honors and other coding achievements). At the time of his application to Cornell, "the test-optional policy was . . . in force." *Id.* at ¶ 66. Cornell denied him admission. *Id.* at ¶ 84.

Just after Stanley turned 18, Google hired him as a L4 software engineer, "a position typically reserved for candidates with a Ph.D. or equivalent industry experience." Am. Compl.

[3] These facts are drawn from the amended complaint. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

¶ 80. The rigorous interview process included a more than ten-hour review by five randomly assigned engineers. *Id.* at ¶ 79. Stanley's January 2025 performance evaluation indicated that he "met all expectations and showed strong potential for continued growth." *Id.* at ¶ 81.

Minor Son, an Asian American high school student and Stanley's brother, is a rising junior in high school, and anticipates applying to Cornell during the 2026–2027 application cycle, seeking to enroll in the fall of 2027. Am. Compl. ¶¶ 10, 110. Minor Son has not yet taken the PSAT, but he has a 4.0 GPA as well as other achievements including varsity cross-country, juggling, and solving a Rubik's Cube in 6.25 seconds. *Id.* at ¶¶ 111–12.

Michael Kotlikoff is the President of Cornell University, and Shawn Felton is the Director of Undergraduate Admissions at Cornell University. Am. Compl. ¶¶ 12–14.

"The 2020 U.S. Census shows that New York's Asian population expanded by 36.1 percent over the prior decade—the fastest-growing ethnic group in the state." Am. Compl. ¶ 88. "The national Asian population grew by an almost identical 36 percent over the same period. Yet Cornell's Asian enrollment [ ] is stuck in a narrow band—19.1 % → 20.1 % → 18.1 % → 19.1 % → 18.7 % → 20.1 % for the Classes of 2024-2029." *Id.*

During the 2023 "cycle," Cornell "matriculated 214 Black freshmen," "Cornell's 25th percentile SAT score that year was 1420," "[n]ationally, just 1 percent of Black test-takers scored 1400 or higher," and "assum[ing] that three-quarters of Cornell's Black enrollees meet or exceed the 1420 threshold, this would indicate that [Cornell] captures roughly 161 of the nation's 2,259 highest-scoring Black students—or about 7.1 percent of the entire pool." Am. Compl. ¶ 91. "[C]alculations show Cornell enrolled only 4.1 percent of top Hispanic scorers, 1.9 percent of top White scorers, and a mere 1.0 percent of top Asian American scorers." *Id.* at ¶ 93.

## II. LEGAL STANDARD

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Mann v. N.Y. State Ct. of Appeals*, No. 21-cv-49 (MAD/CFH), 2021 WL 5040236, at *3 (N.D.N.Y. Oct. 29, 2021) (citation omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 297–98 (N.D.N.Y. 2019) (cleaned up). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted). A court may also "refer to evidence outside the pleadings" and "take judicial notice of documents in the public record[.]" *Krajisnik Soccer Club, Inc. v. Krajisnik Football Club, Inc.*, No. 20-cv-1140 (LEK/TWD), 2021 WL 2142924, at *2 (N.D.N.Y. May 26, 2021) (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level[.]" *Id.* (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a

court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

Plaintiffs seek declaratory and injunctive relief as well as damages for violations of (1) Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, against Cornell (count one), (2) 42 U.S.C. § 1981, against Cornell (count two), (3) New York State Human Rights Law, N.Y. Exec Law §§ 290–301, against all Defendants (count three), and (4) New York Civil Rights Law §§ 40-c and 40-d, against all Defendants (count four).

### A. Standing

Defendants do not challenge Stanley's standing for his claims regarding his application to Cornell seeking to enroll in the fall of 2023, but they do argue that Stanley does not have standing to challenge "Cornell's current admissions practices." *See* Dkt. No. 34-1 at 15. Defendants also argue that Nan does not have standing because Minor Son "is not even eligible for admission" to Cornell. *Id.* at 12. Plaintiffs respond that Stanley has established standing for his claims challenging Cornell's alleged discriminatory practices during the 2023 application cycle, and that both Plaintiffs have standing for prospective relief challenging Cornell's current alleged discriminatory admissions practices. Dkt. No. 36 at 25–28.

A plaintiff "bears the burden of establishing standing as of the time he brought [the] lawsuit and maintaining it thereafter." *Carney v. Adams*, 592 U.S. 53, 59 (2020). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (internal citation omitted). Although "Congress may create a cause of action by statute, mere violation of that statute does not give rise to standing to sue under Article III because an injury in

fact still is required." *RLO Group LLC v. Fonseca*, No. 23-cv-7861, 2025 WL 2721396, at *2 (E.D.N.Y. Sep. 24, 2025) (citing *TransUnion LLC*, 594 U.S. at 426 and *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341–42 (2016), *as revised* May 24, 2016 (holding that Congress may elevate harms where none existed before, but a statutory violation on its own will not establish a concrete harm)). Whether plaintiffs have "standing under Article III to bring this case" is a "threshold question." *Karkare on behalf of JN v. Int'l Assoc. of Bridge, Structural, Ornamental & Reinforcing Iron Workers Local 580*, 140 F.4th 60, 64 (2d Cir. 2025) (citing, among other cases, *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) ("If plaintiffs lack Article III standing, a court has no subject[-]matter jurisdiction to hear their claim.") (alteration in original)).

"[A] plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Choi's Beer Shop, LLC v. PNC Merch. Servs. Co., L.P.*, 855 F. App'x 20, 21 (2d Cir. 2021) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)) (summary order). "The Supreme Court has 'repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that [a]llegations of *possible* future injury are not sufficient.'" *Am. Civ. Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)) (additional quotation and citation omitted). A plaintiff may also establish standing "based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." *Clapper*, 568 U.S. at 414 n.5 (citing *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 152 (2010)). The purpose of this imminence requirement is "to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Id.* at 409.

"Ordinarily, to establish standing to challenge an allegedly discriminatory program, a plaintiff must apply to that program." *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 118 (2d Cir. 2025) (citing *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997)). "But a plaintiff need not go through the motions of formally applying when that would be a 'futile gesture.'" *Id.* (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365–66 (1977)). "In such circumstances, a plaintiff need only demonstrate that they are able and ready to apply, but a discriminatory policy prevents them from doing so on equal footing." *Id.* (citing *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003)). Finally, a plaintiff may not rely on "conclusory invocations of" relevant standing factors. *See Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75–76 (2d Cir. 2022) (explaining, in the ADA context, that "Plaintiffs' conclusory invocations of the factors we found relevant in *Kreisler [v. Second Ave. Diner Corp.*, 731 F.3d 184 (2d Cir. 2013)] are insufficient to establish standing.").

### 1. Nan Zhong on Behalf of Minor Son

Defendants argue that Nan, as next friend of Minor Son, does not have standing because Minor Son is not qualified to apply to Cornell, he has not taken the PSAT, and he does not plan to apply until "the 2026-2027 application cycle for fall 2027 enrollment." Dkt. No. 34-1 at 14. Plaintiffs respond that Minor Son is "actively preparing to apply for college," has "concrete plans" to apply to Cornell, and has "superlative achievements." Dkt. No. 36 at 26–27. Defendants reply that Minor Son is "not 'able and ready' to apply to Cornell" because when the original complaint was filed, he was not yet a high school junior, and Cornell does not accept applications from high school juniors.[4] Dkt. No. 37 at 6.

[4] The amended complaint does not contain any allegations indicating that Cornell does not accept applications from high school juniors.

To establish standing, Nan, as next friend of Minor Son, must demonstrate that Minor Son would have standing. *See Doe v. Hochul*, 139 F.4th 165, 180–81 (2d Cir. 2025) (noting that a "representative plaintiff satisfies Article III by demonstrating that the other person—the real party in interest—would 'have standing to sue in his own right.'") (citation and brackets omitted). As a result, Nan must establish that Minor Son had standing on the date that Nan filed this lawsuit.[5] *Carney*, 592 U.S. at 59 ("We here must ask whether [the plaintiff] established that, at the time he filed suit," the challenged Delaware provision "caused him a concrete, particularized 'injury in fact' over and above the abstract generalized grievance suffered by all citizens of Delaware.").

The amended complaint alleges that Minor Son was a rising junior in high school, that he "anticipates applying to Cornell during the 2026-2027 application cycle for fall 2027 enrollment," and that he has not yet taken the PSAT. Am. Compl. ¶¶ 10, 110–11. Even viewing these allegations as true and drawing all reasonable inferences in Plaintiffs' favor, this is not sufficient to allege that Minor Son was "able and ready" to apply to Cornell. In addition, the amended complaint does not allege that Minor Son had taken the SAT or ACT, which Plaintiffs acknowledge is no longer an optional requirement for Cornell admission. Am. Compl. ¶ 61. As a result, the allegation that Minor Son "anticipates applying to Cornell during the 2026-2027 application cycle for fall 2027 enrollment" is not sufficient to allege standing. *See Christa McAuliffe Inter. Sch. PTO, Inc. v. De Blasio*, 364 F. Supp. 3d 253, 272 (S.D.N.Y. 2019) (concluding that individual plaintiffs did not have standing where their children were likely four and seven years "away from applying to high school," and "[t]heir current 'some day' intentions

[5] The relevant date here is July 25, 2025, the date that the amended complaint was filed because Minor Son was not mentioned in the original complaint.

to attend a specialized high school" were "insufficient to show the existence of an imminent injury").

Plaintiffs rely on *Gratz*, where the Supreme Court concluded that a college student had standing even though he did not have a pending transfer student application because he "demonstrated that he was 'able and ready' to apply as a transfer student should the University cease to use race in undergraduate admissions." 539 U.S. at 262. The *Gratz* plaintiff "had applied for admission to the university as a freshman applicant in the recent past and been rejected," "said he intended to apply to transfer to the university in the near future," "[a]nd the university had a 'rolling' transfer program open for application each year, so there was no doubt that the plaintiff's injury was imminent." *Carney*, 592 U.S. at 65. Unlike the *Gratz* plaintiff, Minor Son has not previously applied to Cornell, and his anticipated application was more than one year in the future when the amended complaint was filed.

Accordingly, the amended complaint fails to allege that Minor Son will suffer an imminent future harm, and thus, Nan lacks representative standing as to all claims asserted on Minor Son's behalf.

**2. Stanley Zhong**

Defendants do not challenge Stanley's standing for his claims regarding his application to Cornell seeking to enroll in the fall of 2023. They do, however, argue that Stanley does not have standing to assert any claim related to Cornell's current admissions practices because he does not sufficiently allege that he is able and ready "to apply to Cornell under the new standards adopted since *SFFA [v. President and Fellows of Harvard Coll.*, 600 U.S. 181 (2023)]." Dkt. No. 34-1 at 15. Stanley responds that he has standing for prospective relief because of his "demonstrated interest in Cornell and the ongoing nature of the alleged discrimination." Dkt. No. 36 at 26. In addition, he takes the position that he was "warned about the systemic discrimination in Cornell's

admissions practices, illustrating how each admissions cycle deters qualified Asian students from even applying," and the amended complaint therefore establishes that Stanley is "'ready and able' to benefit from Cornell's admissions process in the absence of discriminatory practices." *Id.* at 27. Defendants reply that Stanley "has chosen not to apply for admission under the current admissions practices," and that he does not allege any intent to do so in the future. Dkt. No. 37 at 4. They also assert that "a 'continued interest' in admissions practices does not confer standing." *Id.* at 5.

Stanley points to no specific allegations in the amended complaint to support his arguments that he has pled both a "demonstrated interest in Cornell" and a "continued interest in challenging Cornell's discriminatory system that doomed his original application." Dkt. No. 36 at 26. In addition, the amended complaint does not allege that Stanley intends to apply to Cornell or that he is "able and ready" to apply.[6] *See Gratz*, 539 U.S. at 262. Accordingly, Stanley failed to allege that he will suffer a future harm, and thus, lacks standing to the extent his claims seek prospective relief.

### B. Stanley's Title VI Claim

Defendants argue that Stanley has not alleged "a plausible Title VI claim with regard to Cornell's admissions practices during the 2022-2023 academic year." Dkt. No. 34-1 at 17. Stanley responds that he has "pleaded evidence of overt policies of racial discrimination which necessarily had only one outcome for the Zhongs: their unfair elimination by Cornell because they are Asian." Dkt. No. 36 at 20.

---

[6] In a notice of supplemental authority, Dkt. No. 39, Plaintiffs cite *Zhong v. Univ. of Wash. Bd. of Regents, et al.*, No. 2:25-cv-348 (W.D. Wash. Aug. 7, 2026), Dkt. No. 50. In that case, unlike here, "Stanley represents that he is 'ready and able to apply to [the University] when it ceases its intentional discrimination against Asian Americans.'" *Id.* at *6 (quoting W.D. Wash. Compl. ¶¶ 58–59).

"Title VI of the Civil Rights Act of 1964 prohibits federally funded programs from discriminating on the basis of race, color, or national origin and provides an implied private right of action." *Bloomberg v. N.Y. City Dep't of Educ.*, 119 F.4th 209, 210 (2d Cir. 2024) (citing 42 U.S.C. § 2000d). "To state a discrimination claim under Title VI of the Civil Rights Act of 1964, [a plaintiff] must allege that 'the defendant discriminated against [him] on the basis of [a protected class], that that discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's actions.'" *Rodrigues v. City of New York*, 835 F. App'x 615, 618 (2d Cir. 2020) (quoting *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001)) (summary order).

"[T]o defeat a motion to dismiss, [a plaintiff] need[ ] only plead facts that '[give] plausible support to a minimal inference of discriminatory motivation.'" *Johnson v. New York Univ.*, 800 F. App'x 18, 21 (2020) (quoting *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)) (summary order). Specific factual allegations are required to establish a Title VI violation. *See Bar-Levy v. Mitchell*, No. 22-cv-3408, 2022 WL 14746399, at *8 (S.D.N.Y. Oct. 25, 2022) ("In order to establish a Title VI violation, a plaintiff must show, through specific factual allegations. . . .") (citing *Faccio v. Eggleston*, Nos. 10-cv-783, 10-cv-699 (DNH), 2011 WL 3666588, at *9 (N.D.N.Y. Aug. 22, 2011) (discriminatory animus must be pleaded with particularity); *TC v. Valley Cent. Sch. Dist.*, 777 F. Supp. 2d 577, 595 (S.D.N.Y. 2011) (same); *Lopez v. Bay Shore Union Free Sch. Dist.*, 668 F. Supp. 2d 406, 414 (E.D.N.Y. 2009) (same)).

To allege discriminatory intent, Stanley relies on two categories of statistical allegations: (1) United States Census data regarding the Asian population and data from an unidentified source regarding "Cornell's Asian enrollment," and (2) national SAT statistics for "Black test-takers" and data from an unidentified source indicating that Cornell "matriculated . . . 214 Black freshmen"

during the "2023 cycle."[7] Am. Compl. ¶¶ 88, 91, 93. Although Defendants vigorously challenge these allegations, they acknowledge that a plaintiff may plausibly allege discriminatory intent relying on statistical evidence. Dkt. No. 36 at 12; Dkt. No. 37 at 5. Stanley responds that the statistical allegations are a sufficient basis from which to infer discriminatory intent. Dkt. No. 36 at 17–18.

Regarding the standard for statistical allegations, both parties quote the Second Circuit's analysis in the Title VII context in *Burgis v. New York City Dep't of Sanitation*, 798 F.3d 63, 69 (2d Cir. 2015). *See* Dkt. No. 36 at 13–14 ("'the statistics must not only be statistically significant in the mathematical sense, but they must also be of a level that makes other plausible non-discriminatory explanations very unlikely.'") (quoting *Burgis*, 798 F.3d at 69); Dkt. No. 34-1 at 28 (explaining that in *Annabi v. New York Univ.*, No. 22-cv-3795, 2024 WL 4252062, at *8 (S.D.N.Y. Sep. 20, 2024), *aff'd*, 2025 WL 1066083 (2d Cir. Apr. 9, 2025), the district court noted that the allegations did not warrant an inference of gender bias because [they] were not 'of a level that makes other plausible non-discriminatory explanations very unlikely.'") (quoting *Burgis*, 798 F.3d at 69).

Beginning with the Census and Cornell enrollment data, the allegations are that:

> The 2020 U.S. Census shows that New York's Asian population expanded by 36.1 percent over the prior decade—the fastest-growing ethnic group in the state. The national Asian population grew by an almost identical 36 percent over the

[7] To the extent Stanley relies on his allegations that he is Asian American and that Cornell denied him admission despite his qualifications, Am. Compl. ¶¶ 9, 81, 83, 84, 86, those allegations are not a sufficient basis for this Court to infer that Cornell denied him admission because he was Asian American. *See Salem v. New York Univ.*, No. 22 Civ. 5112, 2023 WL 8438713, at *6 (S.D.N.Y. Sept. 15, 2023), *report and recommendation adopted*, 2023 WL 8253026 (S.D.N.Y. Nov. 29, 2023) (explaining that the plaintiff, who "alleges that he is Iranian, and that he applied for and was denied readmission to NYU," had "not alleged . . . 'some basis on which this Court may infer that the reason he was denied readmission was because of his [national origin] . . . .'") (quoting *Johnson v. N.Y. Univ.*, No. 17 Civ. 6184, 2018 WL 3966703, at *7 (S.D.N.Y. Aug. 20, 2018)).

> same period. Yet Cornell's Asian enrollment [ ] is stuck in a narrow band—19.1 % → 20.1 % → 18.1 % → 19.1 % → 18.7 % → 20.1 % for the Classes of 2024-2029.

Am. Compl. ¶ 88.

Defendants argue that these allegations do not support an inference of discrimination for the time period when Stanley's application was reviewed, that is the 2022-2023 academic year, for a number of reasons including that Stanley: (1) compares "general population census information for the decade of 2010-2020 with enrollment data beginning five years later for 2024"; (2) does not offer any support that the general population is representative of the qualified applicant pool for Cornell; and (3) offers data for enrolled classes, not admitted classes, even though Cornell does not control post-admission decisions by admitted students. Dkt. No. 34-1 at 18–22. Stanley does not respond to any of these arguments.

At the outset, the allegation refers to "Cornell's Asian enrollment" for the "Classes of 2024-2029," and it is not clear whether that refers to students enrolled in 2024-2029 or the graduating years of the classes, meaning students enrolled in 2020-2025. In any event, even assuming the allegation refers to students enrolled in 2020-2025, which would cover the year that Stanley applied, and viewing these allegations as true and drawing all reasonable inferences in Stanley's favor, the alleged data are not a sufficient basis from which to infer intentional discrimination.

First, the time periods of the alleged comparative data sets are different. The Census data is for 2010-2020, while the most favorable interpretation of "Classes of 2024-2029" is that the data is for students enrolled in 2020-2025. Second, the census numbers are general population numbers, while the Cornell enrollment numbers are for qualified admitted students who chose to attend Cornell, and Stanley does include any allegations regarding why the national census statistics are representative of Cornell's applicant pool. *See Mandala v. NTT Data, Inc.*, 975 F.3d

202, 210–11 (2d Cir. 2020) (explaining, in the context of a Title VII disparate impact claim, that "[g]eneral population statistics are a reliable surrogate only when there is reason to think that they 'accurately reflect the pool of qualified job applicants' for the position in question. Otherwise relying on them to show a disparate impact is a bit like relying on apples to study oranges.") (quoting *Malave v. Potter*, 320 F.3d 321, 326 (2d Cir. 2003)) (internal quotation marks omitted in original) (internal citation omitted). Furthermore, the amended complaint does not plausibly allege that general population data are comparable to enrolled Cornell student data given the pleading's implicit acknowledgment that special qualifications, like Stanley's own "stellar" qualifications, are required to be admitted to Cornell. *See id.* at 212 ("And it is beyond cavil that '[w]hen special qualifications are required to fill particular jobs, comparisons to the general population (rather than to the smaller group of individuals who possess the necessary qualifications) may have little probative value.'") (quoting *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308 n.13 (1977)). In addition, Stanley alleges data for enrolled students, and that population is distinct from the data for admitted students.[8]

Despite these deficiencies, Defendants offer "the actual enrollment data" for 2010-2020 to argue that, even "[s]etting aside all the legal and practical issues with comparing general census data with Cornell's enrollment numbers," that data shows that "enrolled Asian Americans between

[8] In their notice of supplemental authority, Dkt. No. 39, Plaintiffs cite *Univ. of Wash.* No. 2:25-cv-348, Dkt. No. 50, and *Sargent v. Sch. Dist. of Phila.*, 165 F.4th 727 (3d Cir. 2026). Both cases are distinguishable. In *Zhong*, the court denied the university's motion to dismiss Stanley's Title VI racial discrimination claim, but, unlike here, that court did not analyze statistical evidence for the purposes of alleging discriminatory intent, and instead, examined a "DEIA Plan" and a "BPC Plan." No. 2:25-cv-348, Dkt. No. 50, at *18–19, *23. In *Sargent*, the Third Circuit considered, at the summary judgment phase, only specific data related to the raw number of students accepted by race (without accounting for the number of applicants by race) before and after the implementation of the policy at issue. *See* 165 F.4th at 744. The Third Circuit was not, however, presented with general census data to evaluate alleged discriminatory intent.

2010 and 2020 at Cornell is an increase of 50.3% [ ] compared to a 36% increase in the general population." Dkt. No. 34-1 at 21. Although this data was not attached to the amended complaint, Defendants argue that it can be considered because the original complaint "references Cornell admissions statistics and attached excerpts of Cornell's class profiles as exhibits," and the amended complaint "references Cornell's admissions statistics." *Id.* at 20 n.8. Stanley responds that Defendants "substitute their own" data. Dkt. No. 36 at 18. He also argues, "[b]ut even if this Court permits Defendants to introduce extraneous evidence, Cornell's own statistics track in near lockstep the statistics" in *SFFA*, 600 U.S. at 222. *Id.*

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (additional quotation omitted)). "However, 'even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.'" *Id.* (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)) (additional quotations omitted). "'It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.'" *Id.* (quoting *Faulkner*, 463 F.3d at 134).

Applying those standards here, the Court declines to consider the data proffered by Defendants. Stanley did not include this data in the amended complaint, and it is not explicitly incorporated by reference. In addition, Stanley characterizes it as "extraneous data" and does not

ask the Court to consider it. Finally, given the amended complaint's lack of precision regarding the labeling of the data ("enrollment") and the absence of allegations regarding the source of the data, there is not a persuasive basis to consider this data. [9]

Stanley also alleges that Cornell had a "test-optional (or even test-blind policy)" from the "2021 cycle . . . through the Class of 2029" and that "[b]y discarding the most objective datapoint, Cornell ensures that admissions decisions lean harder than ever on discretionary, purportedly 'holistic' factors." Am. Compl. ¶¶ 61–62. But even accepting those allegations as true and drawing all reasonable inferences in favor of Stanley, these allegations are conclusory and lack factual detail. They therefore do not sufficiently allege that the test-optional policy supports an inference of discrimination based on race. *See Kehn v. US Coachways, Inc.*, No. 23-cv-10762, 2025 WL 252901, at *6 (S.D.N.Y. Jan. 21, 2025) (concluding that an "allegation that the actions were 'clearly motivated by discriminatory animus . . . based upon [plaintiffs'] national origin and/or religious affiliation,' is a 'conclusory allegation of discrimination that is insufficient to establish liability.'") (quoting *Manolov*, 300 F. Supp.2d at 532 (citing *Iqbal,* 556 U.S. at 678)).

In addition, Stanley alleges that for the "2023 cycle . . . Cornell matriculated 214 Black freshmen," that "Cornell's 25th-percentile SAT score that year was 1420," that nationally just 1% of "Black test-takers scored 1400 or higher," and assuming "that three-quarters of Cornell's Black enrollees meet or exceed the 1420 threshold, this would indicate that the University captures roughly 161 of the nation's 2,259 highest-scoring Black students—or about 7.1 [%] of the entire pool," while enrolling only 4.1% of "top Hispanic scorers;" 1.9% of "top White scorers," and 1%

[9] Even if the Court considered the enrollment data proffered by Cornell, Stanley's comparison, Dkt. No. 36 at 19, relies on inconsistent data pools because the proffered data is enrollment data, while the Harvard data is for admitted student data. *See SFFA*, 600 U.S. at 222 (title of the chart is "Share of Students Admitted to Harvard by Race").

of "top Asian American scorers." Am. Compl. ¶¶ 90–93. But even viewing the allegation as true, it is not clear what the "2023 cycle" means regarding "matriculated . . . freshmen," and whether that refers to enrolled students who began in the Fall of 2023 or something else. *See* Dkt. No. 34-1 at 22 (arguing that this allegation cites data published for the 2023 graduating class who enrolled in the Fall of 2019, several years before Stanley applied). Furthermore, as the amended complaint acknowledges, Cornell did not require test scores when Stanley applied, and Stanley has not included any allegations regarding why that does not affect the data. In fact, given that test scores were not required, it seems likely that the data for the 25% percentile SAT scores alleged by Stanley involves the population of students who reported SAT scores, and that population is smaller than the "matriculated" student pool. As a result, as presently alleged, the Court cannot infer that these statistics are "relevant to the claim" that Stanley "seeks to prove." *See Mandala*, 975 F.3d at 210 ("[T]he statistical analysis must, at the very least, focus on the disparity between appropriate comparator groups . . . reveal[ing] disparities between populations that are relevant to the claim the plaintiff seeks to prove." (internal citations and quotations omitted)).

Given the deficiencies identified, the alleged statistics are not "of a level that makes other plausible non-discriminatory explanations very unlikely." *Burgis,* 798 F.3d at 69; *see also id.* at 70 n.6 ("As a general rule, 'if the difference between the expected value and the observed number is greater than two or three standard deviations, then the hypothesis that [the alleged discriminatory action was taken] without regard to race would be suspect.'").

Finally, Stanley points to his allegations regarding statements made by (1) Cornell in an amicus brief filed in *SFFA*, (2) former Cornell President Martha Pollack on June 29, 2023, the day that *SFFA* was issued, and (3) Cornell Vice Provost for Enrollment Lisa Nishii, after Ms. Pollack's statement. Am. Compl. ¶¶ 41, 42, 44. Defendants argue that legal arguments in an amicus brief

on behalf of many institutions are not probative of discriminatory intent because they were not specifically made by Cornell, and that the quoted statements by then-President Pollack and Ms. Nishii were made after Stanley's application was rejected. Dkt. No. 34-1 at 23. Stanley responds that discriminatory intent is adequately pled "as articulated by University-wide leadership through President Pollack and Vice Provost Nishii." Dkt. No. 36 at 22.

Regarding the *SFFA* amicus brief, Stanley has not offered any legal authority supporting his argument that legal arguments in an amicus brief signed by fifteen institutions, including Cornell, *see Brief for Brown Univ. et al. as Amici Curiae Supporting Respondents*, *SFFA*, 600 U.S. 181 (2023) (No. 1199), 2022 WL 3137023, can be the basis to infer discriminatory intent.

Regarding the alleged statements made by Ms. Pollack and Ms. Nishii after Stanley's application was rejected, the amended complaint alleges that (1) Ms. Pollack (a) "invoked Cornell's founding motto, 'any person, any study,' to justify race-based preferences, framing exclusionary racial policies as though they were expressions of exclusion" up to as recently as June 2024, Am. Compl. ¶ 29, and (b) issued a statement that Cornell was "disappointed" the day *SFFA* was decided on June 29, 2023, *id.* at ¶ 41, and (2) Ms. Nishii "quickly amplified" Ms. Pollack's June 29, 2023 statements and "assured the community that Cornell remained 'fully committed' to producing a 'compositionally diverse incoming class,' explaining that admissions officers would continue their 'individualized, *holistic* review' to reach the University's preferred demographic result," *id.* at ¶ 42. Although these statements may shed light on Cornell's views of *SFFA*, there is nothing on their face to support an inference of discriminatory intent with respect to Stanley's admissions decision. The invocation regarding Cornell's founding motto is insufficient for the same reason.

In sum, accepting the allegations in the amended complaint as true and drawing all reasonable inferences in Stanley's favor, Stanley has not sufficiently alleged discriminatory intent. Defendants' motion to dismiss Stanley's Title VI claim is therefore granted, and that claim is dismissed.

### C. Stanley's Section 1981 Claim

Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and extractions of every kind, and to no other.

42 U.S.C. § 1981(a). "The rights protected by [Section 1981] are protected against impairment by nongovernmental discrimination[.]" *Id.* at § 1981(c).

For a Section 1981 claim, "a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate [on] the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (*i.e.*, make and enforce contracts, sue and be sued, give evidence, etc.)." *Joy v. Crime Victims Treatment Ctr.*, No. 23-cv-11177, 2025 WL 326521, at *10 (S.D.N.Y. Jan. 29, 2025) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)).

"'A plaintiff's naked allegation that the defendant acted based on the plaintiff's race and color is too conclusory to survive a motion to dismiss.'" *Id.* (quoting *Bentley, Jr. v. Mobil Gas Station*, 599 F. App'x 395, 396 (2d Cir. 2015)). "Finally, 'a complaint that identifies other possible motives, combined with a lack of specific factual support of racial animus, contradicts a claim of racial discrimination.'" *Id.* (quoting *Akyar v. TD Bank US Holding Co.*, No. 18 Civ. 379, 2018 WL 4356734, at *3 (S.D.N.Y. Sept. 12, 2018)). A Section 1981 plaintiff "bears the burden of

showing that race was a but-for cause of [the] injury." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020).

Stanley's Section 1981 claim fails for the same reasons as his Title VI claim. *See Tolbert*, 242 F.3d at 69 (2d Cir. 2001) (noting that, to establish a claim based on either Title VI or Section 1981, the plaintiff "must show, *inter alia*, that the defendant discriminated against him on the basis of race [and] that the discrimination was intentional, and that the discrimination was a 'substantial' or 'motivating factor' for the defendant's actions") (citations omitted); *see also Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) ("We conclude, therefore, that § 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination").

Therefore, because Stanley fails to plausibly allege a Title VI claim, he fails to state a Section 1981 claim for the same reasons.

### D. Stanley's New York State Law Claims

Stanley articulates that his New York State Human Rights Law and New York Civil Rights Law discrimination claims are premised on the same conduct as his Title VI and Section 1981 claims. *See* Dkt. No. 36 at 24–25. 28 U.S.C. § 1367(a) provides:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that the form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). A district court may "decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if . . . the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).

"A district court may decline to exercise supplemental jurisdiction over pendent state law claims if it has dismissed all claims over which it has original jurisdiction." *Allen v. City of New York*, No. 24-2589-cv, 2025 WL 3152723, at *2 (2d Cir. Nov. 12, 2025) (citing 28 U.S.C.

§ 1367(c)(3)) (summary order). Indeed, the district court "may (and indeed ordinarily should) kick the case to state court." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966)). "When deciding whether to exercise jurisdiction over pendent state law claims, courts weigh the factors of 'judicial economy, convenience, fairness, and comity.'" *Allen*, 2025 WL 3152723, at *2 (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *abrogated on other grounds by Royal Canin*, 604 U.S. at 39–41); *see also Kolari v. New York–Presbyterian Hosp*., 455 F.3d 118, 122 (2d Cir. 2006) (noting that "'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'") (quoting *Cohill*, 484 U.S. at 350 n.7).

As explained above, all of the federal claims are dismissed. After balancing all of the relevant factors, the Court declines to exercise supplemental jurisdiction over Stanley's remaining state-law claims, which are dismissed without prejudice. *See also Idlibi v. Conn. Dep't of Pub. Health*, No. 24-720-cv, 2024 WL 4645698, at *3 (2d Cir. Nov. 1, 2024) (summary order) ("[W]e agree with the District Court that [plaintiff]'s Title VI claims fail as a matter of law. Finally, with no federal claims remaining, the District Court did not abuse its discretion in declining to exercise supplemental jurisdiction over [plaintiff]'s state law claims.") (internal citations omitted).

## IV. LEAVE TO AMEND

Federal Rule of Civil Procedure 15 provides that a court should "freely give" a plaintiff leave to amend a complaint "when justice so requires." Reasons to deny such leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178 (1962). The objective served by freely allowing amendments is to enable a party "to assert

matters that were overlooked or were unknown at the time of the original complaint." *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 703 (2d Cir.1985) (quotation marks omitted).

Although Defendants' motion to dismiss is based on an amended complaint, the original complaint was filed by Plaintiffs while they were not represented by counsel, and were proceeding *pro se*. Therefore, on these facts, Plaintiffs shall be given a final opportunity to amend the complaint.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6), Dkt. No. 34, is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' Amended Complaint be **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED** that any amended complaint must be filed within thirty days of the date of this Memorandum-Decision and Order, and it is further

**ORDERED** that, if Plaintiffs fail to file an amended complaint within the thirty-day deadline, the Clerk of the Court is respectfully directed to close this case without further order from the Court.

**IT IS SO ORDERED.**

Dated: September 30, 2026

Elizabeth C. Coombe
U.S. District Judge